United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

R.P.,[1]

Plaintiff,

v.

SSA COMMISSIONER,

Defendant.

Case No. 25-cv-09833-TSH

**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 17, 20

## I. INTRODUCTION

Plaintiff R.P. moves for summary judgment to reverse the Social Security Administration's denial of her claim for disability benefits under the Social Security Act, 42 U.S.C. § 401 et seq. ECF No. 17. Defendant cross-moves to affirm. ECF No. 20. Pursuant to Civil Local Rule 16-5, the matter is submitted without oral argument. For the reasons stated below, the Court **GRANTS** Plaintiff's motion and **DENIES** Defendant's cross-motion.[2]

## II. PROCEDURAL HISTORY

On February 17, 2023, Plaintiff filed an application for Social Security disability insurance benefits, stating a disability onset date of April 28, 2022. Administrative Record (AR) 224-32. Following denial at the initial and reconsideration levels, Plaintiff requested a hearing before an Administrative Law Judge (ALJ). AR 95-99, 101-04, 108-09. An ALJ held a hearing on October 8, 2024 and issued an unfavorable decision on November 22, 2024. AR 15-31, 32-61. The

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 6, 11.

Appeals Council denied Plaintiff's request for review on September 16, 2025. AR 1-6. Plaintiff now seeks review pursuant to 42 U.S.C. § 405(g).

## III. ISSUES FOR REVIEW

Plaintiff raises two issues on appeal: (1) the ALJ failed to properly assess her residual functional capacity; and (2) the ALJ failed to properly assess her subjective symptom testimony.

## IV. STANDARD OF REVIEW

42 U.S.C. § 405(g) provides this Court's authority to review the Commissioner's decision to deny disability benefits, but "a federal court's review of Social Security determinations is quite limited." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based on the application of improper legal standards. *Id.* Substantial means "more than a mere scintilla," but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (cleaned up). Under this standard, which is "not high," the Court looks to the existing administrative record and asks "whether it contains 'sufficient evidence' to support the agency's factual determinations." *Id.* at 102 (cleaned up).

The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citation omitted). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Id.* at 1010 (citation omitted). If "the evidence can reasonably support either affirming or reversing a decision," the Court must defer to the ALJ's decision. *Id.* (citation omitted).

Even if the ALJ commits legal error, the ALJ's decision must be upheld if the error is harmless, meaning "it is inconsequential to the ultimate nondisability determination, or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Brown-Hunter*, 806 F.3d at 492 (cleaned up). But "[a] reviewing court may not make independent findings based on the evidence before the ALJ to

conclude that the ALJ's error was harmless" and is instead "constrained to review the reasons the ALJ asserts." *Id.* (cleaned up).

## V. DISCUSSION

### A. Framework for Determining Whether a Claimant Is Disabled

A claimant is "disabled" under the Social Security Act (1) "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months" and (2) the impairment is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(A)-(B); *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012). To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis. 20 C.F.R. § 404.1520(a)(1) (disability insurance benefits); *id.* § 416.920(a)(4) (same standard for supplemental security income). The claimant bears the burden of proof at steps one through four. *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020) (citation omitted).

At step one, the ALJ must determine if the claimant is presently engaged in a "substantial gainful activity," 20 C.F.R. § 404.1520(a)(4)(i), defined as "work done for pay or profit that involves significant mental or physical activities." *Ford*, 950 F.3d at 1148 (cleaned up). Here, the ALJ determined Plaintiff had not performed substantial gainful activity from her onset date of April 28, 2022 through her date last insured of December 31, 2023. AR 20.

At step two, the ALJ decides whether the claimant's impairment or combination of impairments is "severe," 20 C.F.R. § 404.1520(a)(4)(ii), "meaning that it significantly limits the claimant's 'physical or mental ability to do basic work activities.'" *Ford*, 950 F.3d at 1148 (quoting 20 C.F.R. § 404.1522(a)). If no severe impairment is found, the claimant is not disabled. 20 C.F.R. § 404.1520(c). Here, the ALJ determined Plaintiff had the following severe impairments: degenerative disc disease of the cervical and lumbar spine; poorly controlled diabetes mellitus and hypertension; IBS; obesity; agoraphobia; panic disorder; anxiety disorder; and depression. AR 20.

United States District Court
Northern District of California

At step three, the ALJ evaluates whether the claimant has an impairment or combination of impairments that meets or equals an impairment in the "Listing of Impairments" (referred to as the "listings"). *See* 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. Pt. 404 Subpt. P, App. 1. The listings describe impairments that are considered "to be severe enough to prevent an individual from doing any gainful activity." *Id.* § 404.1525(a). Each impairment is described in terms of "the objective medical and other findings needed to satisfy the criteria of that listing." *Id.* § 404.1525(c)(3). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (footnote omitted). If a claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent to the criteria of the diagnosis, he is conclusively presumed to be disabled, without considering age, education and work experience. 20 C.F.R. § 404.1520(d). Here, the ALJ determined Plaintiff did not have an impairment or combination of impairments that meets the listings. AR 21.

If the claimant does not meet or equal a listing, the ALJ proceeds to step four and assesses the claimant's residual functional capacity (RFC), defined as the most the claimant can still do despite their imitations (20 C.F.R. § 404.1545(a)(1)), and determines whether they are able to perform past relevant work, defined as "work that [the claimant has] done within the past five years that was substantial gainful activity and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. § 404.1560(b)(1). If the ALJ determines, based on the RFC, that the claimant can perform past relevant work, the claimant is not disabled. *Id.* § 404.1520(f). Here, the ALJ determined Plaintiff has the RFC to

> to perform light work as defined in 20 CFR 404.1567(b). In addition, she could perform simple routine tasks in a low stress environment, involving only simple instructions and tasks that do not involved production rate pace (such as on an assembly line) and no hourly quota, with only occasional changes in routine work setting and occasional interaction with supervisors, co-workers and the public.

AR 22. Based on this RFC, the ALJ determined Plaintiff could not perform past relevant work. AR 25.

At step five, the burden shifts to the agency to prove that "'the claimant can perform a

significant number of other jobs in the national economy.'" *Ford*, 950 F.3d at 1149 (quoting *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002)). To meet this burden, the ALJ may rely on the Medical-Vocational Guidelines (commonly known as "the grids"), 20 C.F.R. Pt. 404 Subpt. P, App. 2,[3] or on the testimony of a vocational expert. *Ford*, 950 F.3d at 1149 (citation omitted). "[A] vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. § 404.1560(b)(2). An ALJ may also use other resources such as the Dictionary of Occupational Titles (DOT).[4] *Id.* Here, the ALJ determined there were jobs that existed in significant numbers in the national economy that the claimant could perform. AR 26. As such, the ALJ determined Plaintiff was not under a disability, as defined in the Social Security Act, at any time from April 28, 2022, the alleged onset date, through December 31, 2023, the date last insured. AR 27.

### B. Residual Functional Capacity

State agency reviewing consultant A. Cepeda, M.D., found Plaintiff could lift 20 pounds occasionally and 10 pounds frequently; could stand, walk, and sit about 6 hours each in an 8-hour day; could occasionally climb ramps/stairs, ladders, ropes, and scaffolds; could occasionally balance, stoop, kneel, crouch, crawl; and must avoid concentrated exposure to hazards. AR 74-76. On reconsideration, T.S. Bawa, M.D., limited Plaintiff to the full range of light work, finding

---

[3] The grids "present, in table form, a short-hand method for determining the availability and numbers of suitable jobs for a claimant." *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114-15 (9th Cir. 2006) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999)). They consist of three tables, for sedentary work, light work, and medium work, and a claimant's place on the applicable table depends on a matrix of four factors: a claimant's age, education, previous work experience, and physical ability. *Id.* "For each combination of these factors, [the grids] direct a finding of either 'disabled' or 'not disabled' based on the number of jobs in the national economy in that category of physical-exertional requirements." *Id.*

[4] The DOT classifies jobs by their exertional and skill requirements. 20 C.F.R. § 404.1566(d)(1); *Wischmann v. Kijakazi*, 68 F.4th 498, 502 (9th Cir. 2023) ("Although criticized as having many outdated job descriptions, the DOT is typically the starting point for VEs to identify the occupations relevant for each claimant's residual functional capacities.") (cleaned up); *Pinto v. Massanari*, 249 F.3d 840, 846 (9th Cir. 2001) (The "best source for how a job is generally performed is usually the Dictionary of Occupational Titles.").

Plaintiff could lift 20 pounds occasionally and 10 pounds frequently, stand and walk about 6 hours in an 8-hour workday, and sit for about 6 hours in an 8-hour workday. AR 86-87. The ALJ found Dr. Bawa's opinion persuasive "because it is generally consistent with the preponderance of the longitudinal medical evidence of record as a whole" and it "is the most recent to date." AR 24. The ALJ found Dr. Cepeda's opinion unpersuasive, stating Dr. Cepeda limited Plaintiff to "a range of medium work," which was "not sufficiently restrictive." AR 25.

Plaintiff argues the ALJ erred because "Dr. Cepeda's opinion comports with the lifting requirements of light work, as Dr. Cepeda determined that [Plaintiff] could occasionally lift twenty pounds and frequently lift ten pounds." Pl.'s Mot. at 4-5 (citing AR 74). She argues the ALJ's opinion does not show she properly considered the supportability and consistency factors in weighing Dr. Cepeda's opinion, as she mischaracterizes the lifting requirements and failed to discuss relevant postural limitations. *Id.* at 5.

**1. Legal Standard**

A claimant's RFC is an assessment of "the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." *Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017) (citing Soc. Sec. Ruling 96-8p). It "is the most [a claimant] can still do despite [his or her] limitations." *Id.* (citing 20 C.F.R. § 416.945(a)(1)). The "scope of the RFC plays a crucial role in the ALJ's determination of whether an individual is disabled and entitled to benefits under the Social Security Act." *Id.* "The ALJ is required to consider all of the limitations imposed by the claimant's impairments, even those that are not severe. Even though a non-severe impairment standing alone may not significantly limit an individual's ability to do basic work activities it may — when considered with limitations or restrictions due to other impairments — be critical to the outcome of a claim." *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (cleaned up) (citing Social Security Ruling 96-8p).

**2. Analysis**

The Court finds the ALJ erred in determining that Dr. Cepeda's findings are indicative of

an individual who can perform a range of medium work. Dr. Cepeda's lifting restrictions (20 pounds occasionally and 10 pounds frequently) are consistent with the RFC limiting Plaintiff to light work. *See* 20 C.F.R. § 404.1567(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."); 20 C.F.R. § 404.1567(c) ("Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."). However, this error is harmless because the ALJ ultimately determined a finding of medium work is "not sufficiently restrictive" and therefore limited Plaintiff to light work. *See Brown-Hunter*, 806 F.3d at 492.

Beyond this error, Plaintiff argues the ALJ erred in failing to evaluate Dr. Cepeda's opinion as it relates to postural and environmental limitations. Pl.'s Mot. at 4. Specifically, Dr. Cepeda found Plaintiff could occasionally climb ramps and stairs, occasionally climb ladders, ropes, and scaffolds, occasionally balance, occasionally stoop, occasionally kneel, occasionally crouch, and occasionally crawl. AR 74-75. Additionally, Dr. Cepeda assessed environmental limitations and found Plaintiff must avoid concentrated exposure to hazards. AR 75.

Defendant acknowledges the ALJ's RFC finding contains no postural or environmental limitations but contends the omission is harmless because the jobs identified by the vocational expert[5] would not be precluded by such limitations. Def.'s Mot. at 1-2. In doing so, however, Defendant effectively asks the Court to supply limitations (and corresponding findings) that the ALJ herself did not include in the RFC or analyze in the decision. That approach is impermissible. The Court's review is limited to the reasoning provided by the ALJ, and it may not affirm on a theory that requires augmenting the RFC with limitations the ALJ never found. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) (courts must review the ALJ's decision based on the reasoning offered, not post hoc rationalizations). By arguing that the identified occupations would accommodate unspecified postural or environmental restrictions, Defendant invites the Court to make new RFC findings in the first instance, something it cannot

[5] The ALJ found Plaintiff could perform the following jobs: Cleaner, Housekeeping (DOT 323.687-014); Retail Marker (DOT 209.587-034); and Power Screwdriver Operator (DOT 699.685-026).

do.

Although an ALJ's error may be deemed harmless where it is inconsequential to the ultimate nondisability determination, the harmless error inquiry must be confined to the ALJ's stated reasoning and findings. *See Brown-Hunter*, 806 F.3d at 492. A reviewing court "may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless," but instead is "constrained to review the reasons the ALJ asserts." *Id*. (cleaned up). Here, because Defendant admits the ALJ does not address Plaintiff's postural and environmental limitations, the Court finds it cannot deem the omission harmless by hypothesizing how such limitations would interact with the identified jobs.

**C. Symptom Testimony**

At the hearing before the ALJ, Plaintiff testified to a range of physical and mental symptoms. She stated she stopped working on April 28, 2022 due to back and neck pain. AR 46. She also reported hearing problems requiring a left-ear hearing aid. AR 48. Plaintiff testified she was awaiting right-hand carpal tunnel surgery but could not proceed due to high blood sugar, and that she had experienced numbness in her hands and thumb since the year prior to the hearing. Plaintiff is waiting to undergo carpal tunnel surgery on the right hand and cannot undergo surgery yet because of high blood sugar. *Id.* She testified to numbness in her hands and thumb since the year prior to the hearing. *Id.* She described back pain limiting her ability to stand, as well as dizziness and vertigo affecting her balance. AR 48-50. Plaintiff testified she has irritable bowel syndrome that is aggravated by stress. AR 55.

Plaintiff also described functional limitations in daily activities. She stated her husband does the cooking because she cannot chop due to carpal tunnel syndrome and because she forgets tasks and burns food. AR 40-41. Although she has a driver's license, she testified she cannot drive due to medication side effects, including brain fog that interferes with multitasking. AR 41. Her husband drives her to appointments. *Id.* She reported that during the day she watches television and mostly waits for her husband to return home. AR 53. She can heat simple meals in a microwave, but her husband otherwise does the cooking. *Id.* She can sweep a small room, but her hand becomes numb if she sweeps for too long. AR 53-54.

Plaintiff also testified to mental health symptoms. She reported depression and anxiety affecting her interest in activities, having no friends, and rarely speaking with others. AR 52-53.

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," but her "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR 23.

Plaintiff argues the ALJ erred because she used boilerplate statements to discount her allegations of disabling symptoms and failed to state with specificity the evidence upon which she relied. Pl.'s Mot. at 7.

**1. Legal Standard**

The Ninth Circuit has established a two-step analysis to determine the extent to which a claimant's symptom testimony must be credited:

> First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. In this analysis, the claimant is *not* required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof.
>
> If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases.

*Garrison*, 759 F.3d at 1014–15 (emphasis in original) (cleaned up). Under this standard, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (cleaned up). "In other words, to reject the specific portions of the claimant's testimony that the ALJ has found not to be credible, we require that the ALJ provide clear and convincing reasons relevant to that portion." *Smith v. Kijakazi*, 14 F.4th 1108, 1113 (9th Cir. 2021); *see also Lambert v. Saul,* 980 F.3d 1266, 1268 (9th Cir. 2020) ("[T]he ALJ must identify the specific testimony that he discredited and

United States District Court
Northern District of California

explain the evidence undermining it.”).

**2. Analysis**

The ALJ did not make any findings that Plaintiff was malingering. Thus, to find Plaintiff’s testimony not credible, the ALJ was required to make specific findings as to credibility and state clear and convincing reasons for each.” *Garrison*, 759 F.3d at 1014–15. The Court finds the ALJ did so here.

Plaintiff testified she was unable to work due to neck and back pain. AR 48. She testified to problems sitting, standing, and maintaining balance. AR 50. She also testified to depression and anxiety. AR 52. The ALJ considered Plaintiff’s testimony and determined it was not entirely consistent with the objective medical evidence, her conservative treatment, and her improvement with treatment. AR 23-24. The ALJ cited imaging studies that were either normal or showed mild to moderate findings and no evidence of stenosis, AR 23, 24-25 (citing AR 451, 471-73 (normal aging changes which were “not expected to cause such extensive pain.”)); physical and mental exams that contained normal findings, AR 23-24 (citing AR 441, 449-50, 453-54, 502, 1065-66); conservative treatment consisting of medication management and physical therapy, *id.* (citing AR 533, 1061, 1084-85, 1318); and improvement of symptoms with treatment and medication, AR 24 (citing AR 362, 398, 486, 520).

While Plaintiff argues the ALJ merely provided a “boilerplate” reason to discount her testimony, the record shows the ALJ summarized Plaintiff’s testimony about her alleged limitations and then cited inconsistencies in the record that contradicted her claims. AR 23-25. The ALJ’s explanation for her assessment of Plaintiff’s testimony was thus more than “a single general statement that the claimant’s statements . . . are not credible.” *Brown-Hunter*, 806 F.3d at 493-94. As such, the ALJ provided valid reasons for discounting Plaintiff’s symptom testimony. *See* 20 C.F.R. § 404.1529(c)(2),(3); *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (inconsistency between a claimant’s allegations and relevant medical evidence is a legally sufficient reason to reject a claimant’s subjective testimony); 20 C.F.R. § 404.1529(c)(3) (effectiveness of treatment is a relevant factor in determining the severity of a claimant’s symptoms); *Parra v. Astrue*, 481 F.3d 742, 750-751 (9th Cir. 2007) (evidence of “conservative

treatment" is sufficient to discount a claimant's testimony regarding severity of an impairment).

Plaintiff also asserts the ALJ erred by relying on objective findings, claiming that an ALJ cannot "discredit a claimant's testimony about symptom severity on the basis that it was not supported by objective evidence." Pl.'s Mot. at 12. However, ALJs are required to "evaluate whether the [symptom] statements are consistent with objective medical evidence and the other evidence." Soc. Sec. Ruling 16-3p, 2017 WL 5180304, at *6. Thus, it was reasonable for the ALJ to consider the objective medical evidence along with other factors to discount Plaintiff's complaints. Further, the ALJ did not solely rely on objective evidence; as discussed above, the ALJ also cited other factors such as conservative treatment and reports of improvement.

Plaintiff next argues there is evidence in the record that supports her testimony, including that her medications were adjusted multiple times and that the record contains a Global Assessment of Functioning (GAF) score of between 31-40.[6] Pl.'s Mot. at 12-14. Plaintiff may have drawn different conclusions about the record had she been the fact finder, but this argument does not show error and ignores the deferential "substantial evidence" standard of review. 42 U.S.C. § 405(g). The "key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled." *Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997). And "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency [in Social Security disability cases] is not high." *Biestek*, 587 U.S. at 102. While Plaintiff may disagree with the ALJ's interpretation of the evidence, the "'possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Fletcher-Silvas v. Saul*, 791 F. App'x 647, 649 (9th Cir. 2019) (quoting *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966)); *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) ("If the record would support more than one rational interpretation, we defer to the ALJ's decision."). Thus, if an ALJ

[6] The Court notes the ALJ did consider the GAF score, finding that, despite the score, mental status examinations were generally normal aside from depressed mood, and longitudinal records reflected improvement with medication and therapy. AR 24 (citing AR 441, 486, 502, 1054-1150, 1155-1572).

"show[s her] work" and the rationale for discounting a claimant's symptom statements "is clear enough that it has the power to convince," the ALJ's decision should be affirmed, even if the reviewing court would have decided the issue differently. *Smartt*, 53 F.4th at 499; *Thomas*, 278 F.3d at 959 (When substantial evidence supports the ALJ's assessment of a claimant's subjective complaints, the reviewing court "may not engage in second-guessing.").

Here, a review of the ALJ's opinion reveals she properly considered the substance of Plaintiff's complaints, but she ultimately determined they could not be fully credited in light of other evidence in the record. The Court cannot conclude that the ALJ erred by failing to say more or interpret the evidence differently. As such, the ALJ's finding on this ground must be affirmed.

**D. Remedy**

As the ALJ failed to address Plaintiff's postural and environmental limitations in the context of her RFC and how they may impact her ability to perform the identified jobs, the remaining question is whether to remand for further administrative proceedings or for the immediate payment of benefits. The Social Security Act permits courts to enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see also Garrison*, 759 F.3d at 1019. "[W]here the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). However, "[r]emand for further proceedings is appropriate where there are outstanding issues that must be resolved before a disability determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated." *Luther v. Berryhill*, 891 F.3d 872, 877–78 (9th Cir. 2018) (citations omitted). It is only "rare circumstances that result in a direct award of benefits" and "only when the record clearly contradicted an ALJ's conclusory findings and no substantial evidence within the record supported the reasons provided by the ALJ for denial of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1047 (9th Cir. 2017).

While the ALJ failed to fully and fairly develop the record when evaluating Plaintiff's disability claim, it is not clear that the ALJ would be required to find Plaintiff disabled.

United States District Court
Northern District of California

Accordingly, remand for further proceedings is appropriate.

## VI. CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiff's motion and **DENIES** Defendant's cross-motion. This matter is **REMANDED** for further administrative proceedings consistent with this order. The Court shall enter a separate judgment, after which the Clerk of Court shall terminate the case.

**IT IS SO ORDERED.**

Dated: August 17, 2026

THOMAS S. HIXSON
United States Magistrate Judge